**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| TYCHO ROBERTSON, | Case No. 3:25-CV-00474-CLB |
| Plaintiff, | **SCREENING ORDER** |
| v. | [ECF Nos. 2, 2-1, 7] |
| FORMATION NATION, d.b.a. INC AUTHORITY, and LEGALZOOM.COM, INC., | |
| Defendants. | |

Before the Court is Plaintiff Tycho Robertson's ("Robertson"), application to proceed *in forma pauperis*, (ECF Nos. 2, 7), and his *pro se* civil rights complaint (ECF No. 2-1). For the reasons stated below, Robertson's *in forma pauperis* application (ECF Nos. 2, 7) is granted, and his complaint (ECF No. 2-1) is allowed to proceed as outlined below.

I.    ***IN FORMA PAUPERIS* APPLICATION**

A person may be granted permission to proceed *in forma pauperis* ("IFP") if the person "submits an affidavit that includes a statement of all assets such [person] possesses [and] that the person is unable pay such fees or give security therefore.  Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress."  28 U.S.C. § 1915(a)(1); *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc) (stating 28 U.S.C. § 1915 applies to all actions filed IFP, not just prisoner actions).

The Local Rules of Practice for the District of Nevada provide: "Any person who is unable to prepay the fees in a civil case may apply to the court for authority to proceed [IFP].  The application must be made on the form provided by the court and must include a financial affidavit disclosing the applicant's income, assets, expenses, and liabilities." LSR 1-1.

1    "[T]he supporting affidavit [must] state the facts as to [the] affiant's poverty with

2    some particularity, definiteness and certainty."  *U.S. v. McQuade*, 647 F.2d 938, 940 (9th

3    Cir. 1981) (quotation marks and citation omitted). A litigant need not "be absolutely

4    destitute to enjoy the benefits of the statute."  *Adkins v. E.I. Du Pont de Nemours & Co.*,

5    335 U.S. 331, 339 (1948).

6    A review of the application to proceed IFP reveals Robertson cannot pay the filing

7    fee; therefore, the Court grants his application. (ECF Nos. 2, 7.)

8    **II.    SCREENING STANDARD**

9    Prior to ordering service on any Defendant, the Court is required to screen an *in*

10   *forma pauperis* complaint to determine whether dismissal is appropriate under certain

11   circumstances. *See Lopez*, 203 F.3d at 1126 (noting the *in forma pauperis* statute at 28

12   U.S.C. § 1915(e)(2) requires a district court to dismiss an *in forma pauperis* complaint

13   for the enumerated reasons). Such screening is required before a litigation proceeding

14   *in forma pauperis* may proceed to serve a pleading. *Glick v. Edwards*, 803 F.3d 505, 507

15   (9th Cir. 2015).

16   "[T]he court shall dismiss the case at any time if the court determines that – (A)

17   the allegations of poverty is untrue; or (B) the action or appeal – (i) is frivolous or

18   malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks

19   monetary relief against a defendant who is immune from such relief." 28 U.S.C. §

20   1915(e)(2)(A), (B)(i)-(iii).

21   Dismissal of a complaint for failure to state a claim upon which relief may be

22   granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. §

23   1915(e)(2)(B)(ii) tracks that language. When reviewing the adequacy of a complaint

24   under this statute, the court applies the same standard as is applied under Rule 12(b)(6).

25   *See, e.g., Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) ("The standard for

26   determining whether a plaintiff has failed to state a claim upon which relief can be granted

27   under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6)

28   standard for failure to state a claim."). Review under Rule 12(b)(6) is essentially a ruling

2

on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The Court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in *pro se* complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotations marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of actions," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more. . . than. . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

## III.    SCREENING OF COMPLAINT

Robertson brings this complaint against Defendants Formation Nation, d.b.a. Inc Authority ("Inc Authority"), and LegalZoom.com, Inc.[1] (ECF No. 2-1 at 4.) Robertson alleges he was employed by Inc Authority from 2017 until he was terminated on February 26, 2025. (*Id.*) Robertson alleges this was in retaliation for his requests for accommodations under the Americans with Disabilities Act and protected conduct under

---

[1]    Robertson alleges that in February 2025, LegalZoom acquired Inc Authority "as a wholly owned subsidiary." (ECF No. 2-1 at 4.)

the Sarbanes-Oxley Act. Robertson alleges the following claims: (1) Americans with Disabilities Act ("ADA") Retaliation ("Claim 1"); (2) Sarbanes-Oxley Act Retaliation ("Claim 2"); (3) Intentional Infliction of Emotional Distress ("IIED") ("Claim 3"); (4) Wrongful Termination in Violation of Public Policy ("Claim 4"); (5) Breach of Implied Contract ("Claim 5"); (6) Breach of the Covenant of Good Faith and Fair Dealing ("Claim 6"); (7) ADA Failure to Accommodate ("Claim 7"); and (8) Retaliation and Disability Discrimination under NRS 613.330 and 613.340 ("Claim 8"). (*Id.* at 20-37.) Robertson seeks declaratory relief that Defendants violated the ADA, SOX, and Nevada law, compensatory and punitive damages, and "other and further legal equitable relief as the Court deems just and proper." (*Id.* at 38-39.)

### A.    Disability Discrimination Claims

The Court will now screen Robertson's claims. The Court will first address Claims 1, 7, and 8 jointly, as the analysis is the same for claims arising under the ADA and NRS 613.330. "The ADA prohibits an employer from discriminating against a qualified individual with a disability 'because of the disability.'" *Nunes v. Wal–Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999) (quoting 42 U.S.C. § 12112(a)). To state a *prima facie* claim of disability discrimination under the ADA, plaintiff must allege facts that plausibly show: "(1) [she] is a disabled person within the meaning of the [ADA]; (2) [she] is a qualified individual with a disability; and (3) [she] suffered an adverse employment action because of [her] disability." *Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 891 (9th Cir. 2001). The ADA "defines discrimination to include an employer's failure to make [a] reasonable accommodation." *Mendoza v. The Roman Catholic Archbishop of Los Angeles*, 824 F.3d 1148, 1150 (9th Cir. 2016) (citation, alteration, and internal quotation marks omitted). Courts have held that claims under NRS 613.330 follow the same standard as the ADA. *See Ulloa v. Nevada Gold Mines*, 2024 WL 728696, at *6, n.8 (D. Nev. 2024) (collecting cases).

///

///

1           **1.    Disability**

With respect to the first prong, the ADA defines a "disabled person" as an individual who has "a physical or mental impairment that substantially limits one or more of the individual's major life activities." *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004). "An impairment covered under the ADA includes any physiological disorder," *id.* and "major life activities" includes "standing," "sitting," and "lifting," 29 C.F.R. § 1630.2. "Substantially limited" means that a person is "significantly restricted as to condition, manner or duration under which [she] can perform [the] particular major life activity as compared to ... [an] average person in the general population." *Coons*, 383 F.3d at 885. "Temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities." *Wilmarth v. City of Santa Rosa*, 945 F.Supp. 1271, 1276 (N.D. Cal. 1996).

Robertson alleges he "has been formally diagnosed with paranoid ideation, a mental health condition that substantially limits major life activities including concentration, social interaction, and emotional regulation." (ECF No. 2-1 at 4.) Robertson attaches as exhibits letters from his treating psychiatrist, Dr. Dustin Braun ("Dr. Braun"). In 2021, Robertson alleges he submitted an ADA request for accommodation to Defendant Inc Authority. (ECF No. 2-1 at 5.) Robertson includes a copy of this request and an ADA Accommodation Medical Certification form, with Inc Authority's header, filled out by Dr. Braun. (ECF No. 2-1 at 5, ECF No. 2-3 at 69.) Robertson alleges that in 2022, Dr. Braun prepared a letter for "Whom It May Concern" that due to concerns related to Robertson's mental health, Robertson be allowed: (1) to have a desk environment against a wall or in a place that reduces noise; (2) to work from home on days in which he has debilitating paranoia; and (3) to utilize noise cancelling headphone in the office. (ECF No. 2-1 at 5, 2-3 at 69.) Both the form and the letter from Dr. Braun state that Robertson will suffer from paranoid ideation for the foreseeable future.

Based on the above, Robertson has sufficiently alleged that he is a disabled

person under the ADA.

### 2.    Qualified Individual and Reasonable Accommodations

Having now determined that Robertson has alleged a disability under the ADA, the Court must next analyze whether Robertson is a qualified individual under the ADA. *Hutton*, 273 F.3d at 891. A "qualified individual" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A qualified individual also "satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds[.]" 29 C.F.R. § 1630.2(m). Federal regulations define essential functions as those "fundamental job duties of the employment position the individual with a disability holds[.]" 29 C.F.R. § 1630.2(n)(1). "The plaintiff bears the burden of proving that he is qualified." *Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 892 (9th Cir. 2001).

When determining whether an individual is qualified for purposes of the ADA, courts engage in a two-step inquiry. *Bates v. United Parcel Serv.*, 511 F.3d 974, 990 (9th Cir. 2007). "The court first examines whether the individual satisfies the 'requisite skill, experience, education and other job-related requirements' of the position. The court then considers whether the individual 'can perform the essential functions of such position' with or without a reasonable accommodation." *Id.* (citations omitted).

Robertson alleges that after receiving the form and letter from Dr. Braun, Inc Authority granted his requested accommodations, and Robertson was relocated to an isolated workspace. (ECF No. 2-1 at 5.) Robertson further alleges that "with these accommodations in place, he achieved record-breaking performance." (*Id.*) Thus, Robertson has alleged sufficient facts to show he is a qualified individual because he alleges that he successfully performed the job when he was given the accommodations.

### 3.    Adverse Action

Now Robertson must sufficiently allege "[he] suffered an adverse employment action because of [his] disability." *Hutton*, 273 F.3d at 891. To succeed on

an ADA discrimination claim, a plaintiff must show that his disability was the but-for cause of the adverse employment action. *Murray v. Mayo Clinic,* 934 F.3d 1101, 1106-7 (9th Cir. 2019) (holding that "ADA discrimination claims... must be evaluated under a but-for causation standard").

Here, Robertson specifies that the alleged adverse action was his termination from employment on February 26, 2025. (ECF No. 2-1 at 21 ("Defendants then imposed an adverse action: President Trevor Rowley terminated Plaintiff. . .".) Robertson alleges that five hours before he was terminated, he emailed himself a renewed ADA accommodation request from his personal email to his company email, to which President Trevor Rowley had access. (*Id.* at 10.) Rowley also allegedly saw the email open on Robertson's computer screen before "Rowley directed [Robertson] into a nearby office and terminated him on the spot." (*Id.*) Robertson further alleges causation is shown by multiple instances where senior Inc Authority made statements that indicated Robertson would be fired if he did not voluntarily give up his accommodations, prompting Robertson to move away from the isolated workspace and back onto the busy sales floor in 2023. (*Id.* at 7-8, 36-7.)

To satisfy the but-for causation standard, Robertson must prove that his termination "would not have occurred but for [his] disability." *Mayo*, 934 F.3d at 1106-7. The issue with finding that Robertson sufficiently alleged that his disability was the but-for cause of his termination is that in his second claim, Robertson alleges that his protected whistleblower activity under the Sarbanes-Oxley Act was a "contributing factor" for his termination on February 26, 2025. (ECF No. 2-1 at 24.) Although the standard for establishing that protected activity was a "contributing factor" under SOX is lower than the but-for cause standard, a SOX claim still involves a determination that the whistleblower activity was partly responsible for the adverse action. *Murray v. UBS Sec.*, LLC, 601 U.S. 23, 26, (2024) (citing Webster's New World College Dictionary 317 (4th ed. 1999) (defining "contribute," in the relevant sense, to mean "to have a share in bringing about (a result); be partly responsible for"); *id.*, at 508 (defining "factor" as "any

of the circumstances, conditions, etc. that bring about a result").

However, in screening *pro se* complaints, the Court must construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins*, 395 U.S. at 421 (citations omitted). Thus, while it is unclear whether Robertson can successfully show his disability was the but-for cause of his termination, the Court must resolve this doubt in Robertson's favor. Consequently, the Court finds Robertson has sufficiently alleged that his disability was the but-for cause of his termination for purposes of screening. Thus, the Court finds that Robertson may proceed on Claims 1, 7, and 8.

### B.    Sarbanes-Oxley Act Retaliation

The Court will now discuss Claim 2, alleging retaliation under the Sarbanes-Oxley Act. SOX was enacted in 2002 "[t]o safeguard investors in public companies and restore trust in the financial markets following the collapse of Enron Corporation." *Lawson v. FMR LLC*, 571 U.S. 429, 432 (2014). Congress was particularly concerned "that Enron had succeeded in perpetuating its massive shareholder fraud" by retaliating against and silencing employees who attempted to report misconduct internally or to a federal agency. *Id.* at 435. To address this concern, SOX makes it unlawful for covered employers to "'discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of' protected whistleblowing activity." *Murray v. UBS Sec.*, LLC, 601 U.S. 23, 26, (2024) (quoting 18 U. S. C. § 1514A(a)).

To state a prima facie claim under SOX, a plaintiff must plead that: 1) the employee engaged in a protected activity; 2) defendants knew or suspected, actually or constructively, that she engaged in the protected activity; 3) the employee suffered an adverse employment action; and 4) the circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the adverse action. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 996 (9th Cir. 2009).

To recover under § 1514A, an aggrieved employee must exhaust administrative

8

1    remedies by "filing a complaint with the Secretary of Labor." § 1514A(b)(1)(A); *Digital*

2    *Realty Tr., Inc. v. Somers*, 583 U.S. 149, 154 (2018) (citing *Lawson v. FMR LLC,* 571

3    U.S. 429, 432 (2014)). Congress prescribed a 180–day limitation period for filing such a

4    complaint. § 1514A(b)(2)(D). If the agency "does not issue a final decision within 180

5    days of the filing of [a] complaint, and the [agency's] delay is not due to bad faith on the

6    claimant's part, the claimant may proceed to federal district court for *de novo* review." §

7    1514A(b); *Digital Realty*, 583 U.S. at 154 (citing *Lawson*, 571 U.S. at 432).

8    In his complaint, Robertson alleges that he filed a SOX whistleblower complaint

9    on August 28, 2025, and "pleads this claim to preserve rights and, in the alternative,

10   requests that this Count be stayed pending completion of the administrative process

11   required by 18 U. S. C. § 1514A(b)." (ECF No. 2-1 at 22.) As Robertson filed the

12   complaint on September 4, 2025, he could not have exhausted his administrative

13   remedies prior to asserting this claim. Consequently, Claim 2 is dismissed without

14   prejudice. However, Robertson is given leave to amend his complaint to allege that he

15   did exhaust his administrative remedies.

16   **C.    Intentional Infliction of Emotional Distress**

17   The Court now turns to Claim 3, alleging intentional infliction of emotional distress

18   ("IIED"). IIED is a claim that arises under Nevada state law. An IIED claim has four

19   elements: "(1) extreme and outrageous conduct on the part of the defendant; (2) intent

20   to cause emotional distress or reckless disregard for causing emotional distress; (3) that

21   the plaintiff actually suffered extreme or severe emotional distress; and (4) causation."

22   *Blige v. Terry*, 139 Nev. 607, 618, 540 P.3d 421, 432 (Nev. 2023) (quoting *Miller v. Jones*,

23   114 Nev. 1291, 1299-1300, 970 P.2d 571, 577 (Nev. 1998)). "Extreme and outrageous

24   conduct is conduct which is 'outside all possible bounds of decency and is regarded as

25   utterly    intolerable    in    a    civilized    community.'" *Okeke*,    927    F.    Supp.    2d    at

26   1029 (quoting *Maduike v. Agency Rent–A–Car*, 114 Nev. 1, 953 P.2d 24, 26 (1998)). In

27   Nevada, it "is well established that whether specific conduct is extreme and outrageous

28   is a factual determination for the jury." *Mikhalsky v. Tran*, 555 P.3d 285 (Nev. App.

2024); *see Branda v. Sanford*, 97 Nev. 643, 637 P.2d 1223, 1227 (1981) ("[The] jury [is] entitled to determine, considering prevailing circumstances, contemporary attitudes and [the Plaintiff's] own susceptibility, whether the conduct in question constituted extreme outrage.") (internal quotation marks omitted). "General physical or emotional discomfort is insufficient to demonstrate severe emotional distress–a plaintiff must allege such 'serious emotional distress' that it 'results in physical symptoms.'" *Evans v. Hawes*, 718 F. Supp. 3d 1351, 1373 (D. Nev. 2024) (quoting *Chowdhry v. NLVH Inc.*, 109 Nev. 478, 851 P.2d 459, 482 (1993)).

Here, Robertson has alleged facts such that, when taken as true, a reasonable jury could find that Defendants actions were extreme and outrageous when considering Robertson's diagnosis of paranoid ideation. For example, Robertson alleges that Defendants were "openly hostile" when making statements about Robertson's disability, causing Robertson's co-workers who overheard the statements to be "shocked." (ECF No. 2-1 at 6, 25.) Robertson also sufficiently alleges he suffered from severe emotional distress, including "paranoia, anxiety, insomnia, depression, and increased need for therapeutic intervention. . . ." (*Id.* at 14-15, 26.)  Consequently, Robertson has sufficiently alleged a claim for IIED and Claim 3 may proceed.

### D.    Wrongful Termination in Violation of Public Policy

Turning to Claim 4, Robertson alleges a claim for wrongful termination in violation of public policy. State, not federal, law creates the cause of action for wrongful discharge in violation of public policy. *Rains v. Criterion Systems, Inc.*, 80 F.3d 339, 343 (9th Cir. 1996). In *Chavez v. Sievers*, the Nevada Supreme Court refused to recognize a common law tortious discharge cause of action when an employer discriminated against an employee in violation of Nevada public policy. 43 P.3d 1022, 1025-26 (Nev. 2002) (holding (holding "we are constrained by the legislature's decision to address the issue through legislation and to provide statutory remedies for only certain employees.").

Robertson repeatedly cites the Nevada Supreme Court's decision in *Hansen v. Harrah's*, 675 P.2d 394 (Nev. 1974) as allowing a public policy exception to at-will

employment. However, *Hansen* identified only a "*narrow* exception to the at-will employment rule recognizing that retaliatory discharge by an employer *stemming from the filing of a workmen's compensation claim* by an injured employee is actionable in tort." *Id.* at 397 (emphasis added). Thus, *Hansen* does not support Robertson's claim for wrongful termination based on filing for ADA accommodations and consequently Robertson may not maintain a claim for wrongful termination in violation of public policy under Nevada common law. *U.S.E.E.O.C. v. Champion Chevrolet*, No. 3:07-CV-444-ECR-VPC, 2008 WL 4167508, at *2 (D. Nev. Sept. 2, 2008).

Claim 4 is therefore dismissed with prejudice and without leave to amend.

### E.    Breach of Implied Contract

The Court now turns to Claim 5, alleging breach of implied contract. The elements of a breach-of-contract claim in Nevada are (1) formation of a valid contract, (2) performance or excuse of performance by the plaintiff, (3) material breach by the defendant, and (4) damages as a result of the breach. *Greenstein v. Wells Fargo Bank, N.A.*, 746 F. App'x 637, 638 (9th Cir. 2018) (quoting *Laguerre v. Nev. Sys. of Higher Ed.*, 837 F. Supp. 2d 1176, 1180 (D. Nev. 2011)). The elements of a breach-of-implied-contract claim are primarily the same as those for breach of an express contract. *Smith v. Recrion Corp.*, 541 P.2d 663, 664 (Nev. 1975). Where the claims differ is that "[t]he terms of an express contract are stated in words while those of an implied contract are manifested by conduct." *Id.* "[T]o prevail on the theory of a contract implied in fact," the plaintiff must demonstrate that "both parties intended to contract and that promises were exchanged...." *Id.* at 665.

Robertson specifically alleges that he was given an employee handbook that created an implied contract which limited his employer's right to terminate at will based on *Southwest Gas Corp. v. Ahmad,* 668 P.2d 261 (1983) and *D'Angelo v. Gardner*, 819 P.2d 206, 209 (1991). Those cases recognized that contractual obligations can be implicit in employer practices and policies as reflected in an employee handbook and when an employer issues an employee handbook containing termination provisions and

the employee has "knowledge of the pertinent provisions therein," this "supports an inference that the handbook formed part of the employment contract of the parties." *D'Angelo*, 819 P. 2d at 209 (quoting *Ahmad*, 668 P.2d at 261). However, employers may unilaterally modify the terms of an at-will employment arrangement in prospective fashion and the employee's continued employment constitutes sufficient consideration for the modification. *Baldonado v. Wynn Las Vegas, LLC*, 194 P.3d 96, 106 (2008) (citing *Camco. Inc. v. Baker*, 936 P.2d 829, 831-32 (1997); *Ahmad,* 668 P.2d at 261). The employee's continued employment constitutes acceptance of, and consideration for, what is essentially a new employment arrangement. *Id.* at n.39 (citing *Camco,* 936 P.2d at 831-32; *Kauffman v. IBT,* 950 A.2d 44 (D.C. App. 2008) (discussing legal theories underlying modifications to at-will employment terms); *DiGiacinto v. Ameriko-Omserv Corp.,* 59 Cal. App. 4th 629, 69 Cal. Rptr. 2d 300 (1997) (same)). Consequently, an employee who has accepted new employment terms by continuing to work for that employer generally has no grounds on which to base a breach of contract claim. *Id.*

In this case, Robertson alleges that he was terminated pursuant to a modified employee handbook that removed protections previously included. (ECF No. 2-1 at 8, 32-33.) However, Robertson asserts his claim based on the protections from the original handbook. Robertson alleges the new handbook was issued on May 23, 2024, and that he was terminated on February 26, 2025. (*Id.* at 32.) Thus, because Robertson alleges he continued working after the handbook was revised – for over nine months – he cannot assert a claim for breach of contract based on the provisions of the old handbook. *Baldonado*, 194 P.3d at 106, n.39. Claim 5 is therefore dismissed with prejudice and without leave to amend.

### F.    Breach of the Covenant of Good Faith and Fair Dealing

Finally, the Court will address Claim 6, alleging breach of the covenant of good faith and fair dealing. Under Nevada law, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." *A.C. Shaw Constr. v. Washoe County*, 105 Nev. 913, 914, 784 P.2d 9 (1989) (quoting Restatement

(Second) of Contracts § 205). "The implied covenants of good faith and fair dealing impose a burden that require each party to a contract to refrain from doing anything to injure the right of the other to receive the benefits of the agreement." *Shaw v. CitiMortgage, Inc.*, 201 F. Supp. 3d 1222, 1251 (D. Nev. 2016) (quotation omitted). Where one party to a contract "deliberately countervenes the intention and spirit of the contract, that party can incur liability for breach of the implied covenant of good faith and fair dealing." *Hilton Hotels v. Butch Lewis Productions*, 107 Nev. 226, 232, 808 P.2d 919, 922-23 (1991) ("*Butch Lewis*"). The implied covenant of good faith and fair dealing "essentially forbids arbitrary, unfair acts by one party that disadvantage the other." *Frantz v. Johnson*, 116 Nev. 455, 465, n. 4, 999 P.2d 351, 358, n. 4 (2000) *citing Consolidated Generator v. Cummins Engine*, 114 Nev. 1304, 1311, 971 P.2d 1251, 1256 (1998); *Overhead Door Co. v. Overhead Door Corp.*, 103 Nev. 126, 128, 734 P.2d 1233, 1235 (1987). *See also Department of Transportation v. District Court*, 133 Nev. 549, 555, 402 P.3d 677, 683 (2017).

Robertson asserts this claim based on the alleged implied contract created by the employee handbook. (ECF No. 2-1 at 33-36.) Specifically, Plaintiff alleges the following:

> For more than four years, Plaintiff and his colleagues worked under a consistent progressive-discipline policy in Defendants' Employee Handbook, which remained unchanged from 2017 until May 2024. This created both an implied contract [] and a reasonable expectation of fair treatment, and Plaintiff relied on this assurance in continuing his employment. Within two to three weeks of Plaintiff reporting the [SOX whistleblower issue] to Manager Daniel Morgan in May 2024, Defendants revised the handbook to eliminate progressive-discipline protections.

(*Id.* at 34.) Critically, if there was no contract, then there exists no implied covenant of good faith and fair dealing. As discussed above, Robertson cannot state a claim for breach of implied contract based on the original employee handbook after it was revised and reissued to the employees when Robertson continued his employment. *Baldonado*, 194 P.3d at 106, n.39. Therefore, Claim 6 is dismissed with prejudice and without leave to amend.

///

### G.    Leave to Amend

Consistent with the above, the Court grants Robertson leave to file an amended complaint to cure the deficiencies of the complaint. If Robertson chooses to file an amended complaint, he is advised that an amended complaint supersedes (replaces) the original complaint and, thus, the amended complaint must be complete in itself. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original"). Any allegations, parties, or requests for relief from prior papers that are not carried forward will no longer be before the court. Robertson should clearly title the amended pleading as "First Amended Complaint." For each Defendant and each claim, he must allege true facts sufficient to show that the Defendant violated his civil rights. Robertson may not amend the complaint to add unrelated claims against other defendants. The Court notes that, if Robertson chooses to file an amended complaint curing the deficiencies, as outlined in this order, Robertson must file the amended complaint within 30 days from the entry of this order, on or before November 27, 2025. If Robertson chooses not to file an amended complaint curing the stated deficiencies, Robertson may proceed on Claims 1, 3, 7, and 8.

## V.    CONCLUSION

**IT IS THEREFORE ORDERED** that Robertson's application to proceed *in forma pauperis* (ECF Nos. 2, 7) is **GRANTED**;

**IT IS FURTHER ORDERED** that the Clerk **FILE** Robertson's complaint (ECF No. 2-1) and **ATTACH** the exhibits (ECF Nos. 2-3, 2-4);

**IT IS FURTHER ORDERED** that Claims 1, 3, 7, and 8 may proceed.

**IT IS FURTHER ORDERED** that Claim 2 be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**.

**IT IS FURTHER ORDERED** that Claims 4, 5, and 6 be **DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND.**

///

**IT IS FURTHER ORDERED** that if Robertson chooses to file an amended complaint curing the deficiencies of his complaint, as outlined in this order, he shall file the amended complaint on or before **November 27, 2025**.

**DATED**: October 27, 2025.

_____
**UNITED STATES MAGISTRATE JUDGE**